# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**IDA L. CRUZ and JUAN E. CRUZ,**

    **Plaintiffs,**

**v.**                                                        Case No:   6:16-cv-1317-Orl-31TBS

**AMERICAN SECURITY INSURANCE COMPANY,**

    **Defendant.**

## ORDER

This matter is before the Court on the Motion to Dismiss the Complaint (Doc. 2) filed by the Defendant, American Security Insurance Co. (Doc. 5); the Memorandum of Law in Opposition to the Motion to Dismiss filed by the Plaintiffs, Ida L. Cruz and Juan E. Cruz (Doc. 13); and the Defendant's Reply in Support of Its Motion to Dismiss (Doc. 20). The action was initially filed in state court on June 14, 2016, however, on July 22, 2016, the Defendant removed the action to this Court based on 28 U.S.C. § 1332 diversity jurisdiction (Doc. 1).

### I.     Background

According to the facts alleged in the Complaint (Doc. 2), which for the purposes of resolving this motion are taken as true, Ida and Juan Cruz (hereinafter "the Cruzes") owned a house located at 1003 Gator Lane, Winter Springs, Florida 32708 (hereinafter "the Property"). Doc. 2 at ¶ 13. American Security Insurance Co. (hereinafter "ASIC") is a Delaware corporation, with its principal office in Atlanta, Georgia, that issues insurance policies in Florida. *Id.* ¶ 9. Nationstar Mortgage, LLC, (hereinafter "Nationstar") is a nonparty, Delaware corporation that holds the Cruzes' mortgage on the Property. *Id.* ¶ 3. ASIC issues force-placed insurance on

Nationstar's behalf and monitors hazard and flood insurance required by Nationstar. *Id.* ¶ 10. The Cruzes contend that at all times relevant to their claim, Nationstar tasked ASIC with communicating with the Cruzes regarding the distribution of insurance proceeds and the issuance of force-placed insurance on the Property. *Id.* ¶ 11–13.

In August, 2004, Hurricane Charley caused extensive damage to the roof of the Property. *Id.* ¶ 15. The Cruzes filed a claim with their insurance carrier and, from January 10, 2005, to July 20, 2009, a total of $94,379.26 was paid on the claim. *Id.* ¶ 18. Pursuant to their mortgage agreement, the proceeds were held by Nationstar while the Cruzes arranged for repairs of the Property. *Id.* ¶ 18–21. The mortgage agreement gave Nationstar the right to hold insurance proceeds until it had the opportunity to inspect the Property, and the right to disperse proceeds in a single payment or in a series of progress payments. *Id.* ¶ 20. ASIC, acting on Nationstar's behalf, detailed how the insurance proceeds would be released in a letter dated February 1, 2008 (hereinafter "the Letter"). *Id.* ¶ 6–8. In light of the surrounding facts, the only plausible reading of the Letter is that Nationstar would release the insurance proceeds in one-third increments, based on the progress of repairs. *Id.* ¶ 6.

On November 8, 2004, Nationstar paid the first check directly to the Cruzes in the amount of $4,988.57. On November 2, 2004, the Cruzes contracted with Emergency Insurance Restoration Services, Inc. (hereinafter "EIRS") to repair the Property, and Nationstar paid EIRS $9,812.14 on March 4, 2005. *Id.* ¶¶ 22, 30. In June, 2005, the Cruzes terminated EIRS for non-performance of the contract and were unable to recover any money paid. *Id.* Three years later, on June 24, 2008, the Cruzes contracted Roof Master Roofing and Construction, LLC (hereinafter "Roof Master") to repair the roof of the Property at a price of $59,450.00. *Id.* ¶ 24. On July 8, 2008, the City of Winter Springs (hereinafter "the City") contacted the Cruzes notifying them that the Property was

in violation of the Florida Building Code and that, if left uncorrected, the City would demolish the Property. *Id.* ¶¶ 32–34. Between June, 2008, and January, 2009, Nationstar released $12,364.86 to the Cruzes for the Roof Master repairs. *Id.* ¶ 26. As of January 28, 2009, Nationstar had received $81,496.72 in insurance proceeds from the Cruzes' insurer. *Id.* ¶¶ 18, 28. On January 14, 2009, Nationstar refused to release any further proceeds to the Cruzes because one-third of the $81,496.72—$27,165.57—had already been released.[1] *Id.* ¶¶ 27–30.

The Cruzes contacted Nationstar on January 21, January 28, and March 19, 2009, requesting additional funds so that Roof Master could continue repairs on the Property. *Id.* ¶¶ 32–37. Nationstar refused, and on August 18, 2009, the City condemned the Property and actually demolished it sometime later. *Id.* ¶ 38. On April 14, 2010,[2] an inspection, allegedly ordered by ASIC, was performed and indicated a block home existed on the Property that was occupied. *Id.* ¶ 53. On April 29, 2013, another inspection, allegedly ordered by ASIC, indicated that there was no structure on the Property and that it was now vacant. *Id.* On October 16, 2013, despite knowledge that the Property was vacant, ASIC performed additional inspections, and sent the Cruzes a notice that force-placed insurance covering buildings and structures had been issued for the Property and charged the Cruzes accordingly. *Id.* ¶ 54, 57.

In summary, the Cruzes bring two counts of fraud against ASIC. In the first count, the Cruzes allege that the Letter was a false representation that a one-third payment of a repair contract would be made, not a one-third payment of the overall insurance proceeds. In the second count, the Cruzes allege that the inspections and force-placed insurance were fraudulent. ASIC

---

[1] On July 20, 2009, the Cruzes' insurance carrier made its final payment of $12,882.54 on the claim, bringing the total proceeds to $94,379.26. Doc. 2 at ¶ 18.

[2] The Complaint (Doc. 2) indicates that the first inspection occurred on April 4, 2010, however the attached Exhibit H shows the date completed as April 14, 2010. Doc. 2 at ¶ 53, Ex. H.

proffers two arguments in its Motion to Dismiss (Doc. 5): (1) that the first count is barred by the statute of limitations, and (2) that, in both counts, the Cruzes fail to allege facts sufficient to establish a claim for fraud or meet the specificity requirement of Federal Rule of Civil Procedure 9(b).

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 678 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the plaintiff is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Further, a complaint will not survive a motion to dismiss if it does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotations omitted).

### III.   Fraud Count I

"A defendant may raise a limitation defense in a motion to dismiss for failure to state a claim 'when the complaint shows on its face that the limitation period has run.'" *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 1253, 1281 (M.D. Fla. 2009) (quoting *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982)). In Florida, an action in fraud must be commenced within four years from when the cause of action accrues. Fla. Stat. § 95.11(3)(j). Typically, a "cause of action accrues when the last element of the cause of action occurs." *Id.* § 95.031(1). "An exception is made for claims of fraud . . . in which the accrual of the cause[] of action is delayed until the plaintiff either knows or should know that the last element . . . [has] occurred." *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002); Fla. Stat. § 95.031(2)(a). The Cruzes argue that under this exception, also called the delayed discovery doctrine, *Id.*, they could not have known that their fraud claim accrued until July 11, 2013, when

they discovered that ASIC was the entity that sent the Letter, not Nationstar.[3] Doc. 2 at ¶ 7. This argument is inconsistent with Florida law.

First, the delayed discovery doctrine postpones accrual of an action "until the plaintiff either knows or reasonably should know of *the tortious act*"—not the identity of the tortfeasor. *Kipnis v. Bayerishce Hypo-Und Vereinsbank, AG*, 784 F.3d 771, 779 (11th Cir. 2015) (emphasis supplied) (quoting *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000)); *see Carter v. Lowe's Home Centers, Inc.*, 954 So. 2d 734, 734 (Fla. Dist. Ct. App. 2007) ("The delayed discovery doctrine [is] reserved to those cases where the plaintiff cannot readily discover the *injury* done to him.") (emphasis supplied); *see also Lee v. Simon*, 885 So. 2d 939, 942–43 (Fla. Dist. Ct. App. 2004) (finding that knowledge of an injury caused by medical negligence was sufficient to commence the running of the statute of limitations, despite the plaintiff's failure to discover the identity of the tortfeasor until much later).

Second, the final element of a fraud claim in Florida is a "consequent injury by the party acting in reliance on [a false] representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Here, the Cruzes allege that the Property was condemned as a result of the Cruzes' reliance on the letter. Thus, the final element of the Cruzes' cause of action was the City's August 18, 2009, condemnation of the Property. It is at this point that the Cruzes reasonably should have known all facts supporting their fraud claim related to the Letter. The Cruzes filed their claim against ASIC in state court on June 14, 2016—over six years later. Thus, Count I is barred by Florida's statute

---

[3] The Cruzes also discuss Florida's statute of repose for fraud. Doc. 13 at 6–7. However, statutes of repose have no effect on when a cause of action accrues, *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182–83 (2014), and, therefore, no effect on a statute of limitations defense. *See Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 694–95 (Fla. 2015) (discussing the difference between statutes of limitations and repose).

of limitations for fraud and will be dismissed with prejudice. *See* Fla. Stat. §§ 95.11(3)(j), 95.031(2)(a).[4]

### IV.  Fraud Count II

To state a claim for fraud in Florida, a plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Yusem*, 44 So. 3d at 105. Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud." "The purpose of this requirement is to alert the defendant to the 'precise misconduct with which [it] [is] charged' and to protect the defendant 'against spurious charges of immoral and fraudulent behavior.'" *Byrnes v. Small*, 142 F. Supp. 3d 1262, 1266–67 (M.D. Fla. 2015) (quoting *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370–71 (11th Cir. 1997)).

Rule 9(b) is satisfied if the plaintiff provides "(1) precisely what statements were made in what documents or oral representations . . . , and (2) the time and place of each such statement and the person responsible for making . . . same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the

---

[4] Even if the claim were not barred by the statute of limitations, there is no indication that the Letter was a false statement. The Letter provided that Nationstar would "release the money to [the Cruzes] and the contractor [the Cruzes] select in one-third increments." Doc. 2, Ex. A. When Nationstar refused to release any further funds, it had already released one-third of the total insurance proceeds it had received to date. *Id.* ¶ 27–28. This shows that the statement in the Letter was, in fact, true. At most, it appears that the Cruzes inferred that the Letter referred to one-third payments on the yet-to-exist Roof Master contract as opposed to the overall insurance proceeds. As stated above, the only plausible reading of the facts is that Nationstar would release the proceeds in one-third increments, based on the progress of repairs. Thus, an action in fraud related to the letter is implausible and subject to dismissal for failure to state a claim. *See Yusem*, 44 So. 3d at 105 (stating that a plaintiff must allege "a false statement concerning a material fact" in order to assert a claim in fraud); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citations and quotations omitted). However, "a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir. 1985).

In Count II, the Cruzes allege that they were charged for several home inspections after the Property had been condemned and destroyed by the City. Doc. 2 at ¶ 51. They further allege that on October 16, 2013, October 13, 2014, and June 29, 2015, ASIC notified and subsequently billed them for force-placed insurance issued on the Property. *Id.* In these notices, ASIC provided that the force-placed policy only covered buildings and structures, even though the lot was vacant. Besides two additional inspection dates, the above is the entirety of the factual allegations comprising Count II of the complaint.

Taking these allegations as true, there is no false statement of material fact. The only representations made by ASIC are those contained in the notifications of force-placed insurance.[5] As alleged, the notices merely informed the Cruzes that the insurance covered buildings and structures on the Property. Even if there were no buildings on the Property, it does not mean that the statement of coverage is false or intended to induce the Cruzes into action or inaction; it only means that the insurance may have been unnecessary. Additionally, the Cruzes fail to allege specifically how they were misled by or relied on the notifications. They only state that they "did in fact rely upon ASIC's representations." Doc. 2 at ¶ 63. Put simply, the Cruzes have failed to state "precisely what statements . . . were made, . . . the content of such statements and the manner in which [the statements] misled" them. *Brooks*, 116 F.3d at 1370. As such, the Cruzes have

---

[5] There are no statements or representations alleged in relation to the inspections. The only allegations are that the Cruzes were charged and that the inspections were unnecessary because the Property was vacant. Doc. 2 at ¶ 51.

neither stated a plausible claim for fraud, nor satisfied the specificity requirement of Rule 9. Therefore, Count II will be dismissed without prejudice.

It is, therefore **ORDERED** that Defendant's Motion to Dismiss (Doc. 5) is **GRANTED** and Count I of the Complaint (Doc. 2) is dismissed with prejudice, while Count II of the Complaint (Doc. 2) is dismissed without prejudice. If the Plaintiffs wish to amend their Complaint as to Count II, they must do so no later than October 19, 2016.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 4, 2016.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party